IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:07-CR-153-MEF |
| | ) | |
| EUGENIO T. PADRON | ) | |

## MOTION TO SUPPRESS STOP, SEARCH AND SEIZURES

**COMES NOW** the Defendant, Eugenio T. Padron, by and through undersigned counsel,

Michael J. Petersen, and pursuant to the Fourth Amendment, Fifth Amendment, and Equal

Protection Clause of the Constitution moves this Court for an Order suppressing any and all evidence

seized by the government as a result of the stop of Mr. Padron's vehicle. This evidence includes any

statements, physical evidence and/or records obtained as a result of the stop and search of Mr.

Padron's vehicle.

### Relevant Facts

On or about July 9, 2007, Jemison, Alabama, Police Department Officer Robbie Autrey

stopped a vehicle driven by Eugenio T. Padron for not having a license tag as it was being driven

south on Interstate Highway 65 at mile marker 217. Mr. Padron admitted that he did not have a

driver's license. Officer Autrey asked Mr. Padron to accompany him to his patrol vehicle to issue

him a written citation for the traffic offense. Mr. Padron is an American citizen of Hispanic origin.

Once inside the patrol vehicle, Officer Autrey began questioning Mr. Padron.

During this interrogation, Officer Autrey asked Mr. Padron questions regarding matters

completely unrelated to the traffic stop. Specifically, Officer Autrey inquired into: (1) if Mr. Padron

had anything illegal in the vehicle, and (2) if the Officer could search Mr. Padron's vehicle. Neither of these questions related to the matter for which the traffic stop had been made. After approximately 10 minutes of interrogation, Officer Autrey then issued Mr. Padron a warning citation.

**However, after the warning ticket was issued, Officer Autrey did not release Mr. Padron**. Instead, without probable cause, Officer Autrey then conducted a search of Mr. Padron's vehicle. Pursuant to that search, a firearm was located in the vehicle. Mr. Padron was then arrested. Mr. Padron was subsequently charged in this court with being a felon in possession of a firearm.

### Issues Presented

I.    **The Fourth Amendment Prohibits Officers From Searching An Individual Incident To An Unlawful Arrest For A Citation-Only Offense.**

On September 25, 2007, the Supreme Court granted certorari from a decision of the Supreme Court of Virginia which held that the search of a defendant after he was detained by police for operating a motor vehicle on a suspended license was a violation of the statute and therefore the Fourth Amendment to the Constitution of the United States required the suppression of evidence seized incident to that arrest. *Virginia v. Moore*, 2007 WL 387563 (U.S.Va. Sep 25, 2007) (NO. 06-1082). Mr. Padron asserts that he is in the same position as the defendant in *Virginia v. Moore*, in that, he too was unlawfully detained by the police for a misdemeanor traffic violation, in violation of Alabama law, and any evidence seized incident to that arrest must be suppressed pursuant to the Fourth Amendment to the Constitution of the United States.

The Fourth Amendment's protection against "unreasonable searches and seizures" (*U.S. Const. Amend. IV*) embodies the foundational principle that – absent the application of a special

exception – individuals will not be seized and searched without a warrant issued upon probable cause. The Supreme Court has recognized certain narrow exceptions to the warrant requirement, including an exception for a search incident to a lawful arrest. *See, e.g., United States v. Robinson*, 414 U.S. 218, 224 (1973).

Both the Supreme Court's decision in *Knowles v. Iowa*, 525 U.S. 113 (1998) and the Fourth Amendment prohibit searches such as the one which occurred in the instant matter.  In *Knowles*, the Supreme Court unanimously held that the search incident to arrest exception to the warrant requirement does not extend to cases in which officers do not arrest the suspect, but only issue a citation. 525 U.S. at 119.  At the same time, prohibiting searches incident to unlawful arrests is consistent with the long-held understanding of the proper balance of interests between citizens' privacy and legitimate law enforcement needs.  Therefore, the evidence must be suppressed.


**II.     The Fourth Amendment Prohibits Officers From Searching An Individual Incident To An Arrest Which Was In Violation of State Law.**

Although the suppression of evidence under the Fourth Amendment is governed by federal law, and Mr. Padron does not suggest otherwise, Mr. Padron does nevertheless assert that state law plays a substantial role in the Fourth Amendment analysis of the propriety of the search in the instant matter.  The state controls the circumstances under which a constitutional search may occur by, at the very least, defining the elements of a state criminal offense.  The question here is whether state law plays an accompanying role in determining the reasonableness of police conduct by establishing the kinds of offenses for which warrantless searches may be conducted under the search incident to arrest exception. Mr. Padron asserts that it does.

The Supreme Court has never held that the search incident to arrest doctrine permits a search whenever an officer arrests an individual regardless of the officer's legal authority to effect the arrest. To the contrary, in *Robinson*, the Court took care to state nine times that its holding applied only to searches incident to a "lawful" arrest. *e.g.*, 414 U.S. at 224 ("It is well settled that a search incident to a *lawful* arrest is a traditional exception to the warrant requirement of the Fourth Amendment.") (*emphasis added*); *Id.* at 235 ("It is the fact of the *lawful* arrest which establishes the authority to search, and we hold that in the case of a *lawful* custodial arrest a full search of the person is ... a 'reasonable' search under that Amendment.") (*emphasis added*). *Id.*

A "lawful" arrest does not simply mean an arrest which complies with the probable cause requirement of the Fourth Amendment even when the arrest is otherwise unauthorized. The Supreme Court's decision in *Michigan v. DeFillipo*, 443 U.S. 31 (1979), makes it clear that the opposite is true. In *DeFillipo*, the defendant was arrested for violating an ordinance that was later declared unconstitutional. During a search incident to that arrest it was discovered that the defendant was in possession of controlled substances, and he was charged with drug possession. *Id*. at 33-34. In deciding whether the Fourth Amendment required that the drug evidence be suppressed, the Supreme Court applied the established rule that "an arresting officer may, without a warrant, search a person *validly* arrested." *Id*. at 35 (*emphasis added*). To decide whether a valid arrest had occurred or had not, the Court examined both the state law authorization for the arrest and then looked to the question of whether the arrest otherwise violated the Fourth Amendment.

The Court began by holding that "[w]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *Id.* at 36. In *DeFillipo*, the question required little analysis because the defendant did "not contend ... that the arrest was not authorized by

4

Michigan law," pursuant to the State's general arrest statute. *See Id.* at 36, 40.  The Court next concluded that an arrest based on probable cause to believe that a suspect had violated a not-yet-invalidated ordinance did not independently violate the Fourth Amendment. *Id*. at 36-38. Concluding that the arrest was authorized by state law and did not otherwise violate the Fourth Amendment, the Court held that "the search which followed was valid because it was incidental to that arrest." *Id*. at 40.

The *DeFillipo* analysis was consistent with the Supreme Court's earlier decision in *United States v. Di Re*, 332 U.S. 581 (1948). In *Di Re*, the defendant was arrested by local law enforcement officers, working with a federal investigator, for possessing counterfeit gasoline ration coupons. 332 U.S. at 582.  During the course of his federal prosecution, the defendant moved to suppress the evidence of the coupons because they were "obtained in violation of the Fourth Amendment." *United States v. Di Re*, 159 F.2d 818, 818 (2d Cir, 1947).  The Second Circuit agreed with the defendant and found that the arrest was in violation of state law and that the search was therefore unconstitutional: "If the prosecution of crime is to be conducted with so little regard for that protection which centuries of English law have given to the individual, we are indeed at the dawn of a new era; and much that we have deemed vital to our liberties, is a delusion." *Id*. at 820.  Before the Supreme Court, the Government asserted that the search fell within the search incident to arrest exception to the Fourth Amendment's warrant requirement. *See* 332 U.S. at 583-84.  The Supreme Court disagreed and held that if the defendant "was lawfully arrested, it is not questioned that the ensuing search was permissible." 332 U.S. at 587.  However, the Court then stated that they "must examine the circumstances and the law of arrest." *Id*.  The Court held that "in the absence of an applicable federal statute the law of the state where an arrest without warrant takes place determines its

validity." *Id*. at 589. Finding that the arrest in the case before it did not comply with local law, the Court held that the arrest was unlawful and, accordingly, declined to apply the search incident to arrest doctrine. *Id*. at 588-95. Therefore, the evidence must be suppressed.

### III.    The Arrest in This Case Violated Alabama Law.

As it was in *Di Re*, the arrest in the instant matter was unauthorized. In Alabama, an officer conducting a traffic stop must comply with the provisions of the Alabama statute governing misdemeanor violations of the traffic code. *See Code of Ala*. § 32-1-4 (2007). Section 32-1-4(a) requires, in pertinent part, that, when an individual is arrested for a violation of any provision of the Motor Vehicles and Traffic Code which is punishable as a misdemeanor, then "the arresting officer shall, unless otherwise provided in this section, take the name and address of such person and the license number of his or her motor vehicle, and shall issue a summons." *Code of Ala*. § 32-1-4(a).

Mr. Padron asserts that he was subject to none of the exceptions listed in the statute. This section of the Code of Alabama further provides that the arresting officer shall then "forthwith release the person from custody." *Id*. The Alabama traffic code specifies that the an individual who is driving without a license is guilty of a misdemeanor upon conviction. *Code of Ala.* § 32-6-19(a)(1) (2007).

Therefore, Officer Autrey exceeded his authority under the applicable Alabama statutes and the arrest of Mr. Padron was unlawful. Thus, in light of the Supreme Court's holdings in *Knowles* and *Di Re*, and pursuant to the requirement of the Fourth Amendment that a warrantless search may only be undertaken following a *lawful* arrest, the fruits of the stop must be suppressed.

**IV.    The Arrest In This Case Was Unconstitutional Because The Officer Lacked Probable Cause To Believe Mr. Padron Had Committed An Arrestable Offense.**

During the time Mr. Padron was detained in the patrol car, Officer Autrey conducted a full search of Mr. Padron's vehicle.  In 1998, a unanimous Supreme Court held that when an Iowa police officer stopped a citizen for a traffic violation, and issued him a citation, that a subsequent search of the vehicle is inconsistent with the Fourth Amendment.  *Knowles v. Iowa*, 525 U.S. 113, 114 (1998).  Before his trial, Knowles moved to suppress the evidence obtained in the search of his vehicle asserting that the search could not be sustained under the "search incident to arrest" exception recognized in *United States v. Robinson*, 414 U.S. 218 (1973), because he had not been placed under arrest.  As Knowles did, Mr. Padron asserts that "because the officer had no probable cause and no search warrant, and the search cannot otherwise be justified under the Fourth Amendment, the search of the car was unconstitutional." *Id*. at 116.

The Supreme Court in *Robinson,supra*, noted there were two historical rationales for the "search incident to arrest" exception: (1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial. 414 U.S., at 234, 94 S.Ct. 467. However, in *Knowles*, the Court held that neither of these underlying rationales for the search incident to arrest exception were sufficient to justify the search. 525 U.S. at 116-17.  As in *Knowles*, neither of the above exceptions were sufficient to justify the search of Mr. Padron's vehicle and therefore, all evidence found as a result of that search, stemming from an *unlawful* detention must be suppressed.

**VI.    The Eleventh Circuit's Holding in *United States V. Perkins*, 348 F.3d 965 (11th Cir. 2003) and United States V. Boyce, 351 F.3d 1102 (11th Cir. 2003) Specifically Prohibited the**

**Further Questioning and Detention of Mr. Padron after the "Warning Ticket" Was Issued.**

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." *Const. Amend IV*. While not all police-citizen encounters trigger Fourth Amendment scrutiny, a traffic stop is a limited seizure within the meaning of the Fourth Amendment, and it is analogous to an investigative detention. *United States v. Perkins*, 348 F. 3d 965, 969 (11th Cir. 2003). Therefore, the legality of such stops is analyzed under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *Terry* requires that such stops require "an officer [to] have an objective, reasonable suspicion of criminal activity," before seizing (or continuing to seizure of) an individual. *Id*. Therefore, if an officer has cause to believe an individual has committed a traffic infraction, the individual can be stopped and seized while the traffic infraction is investigated and activities related to the traffic stop are concluded. *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir.2001).

Some of these investigative activities are a driver and criminal history check. *United States v. Boyce*, 351 F.3d 1102 (11th Cir. 2003). Subsequently, drivers and their vehicles can be detained after a valid traffic stop while a "license check" or "criminal history check" are being conducted. *Id*. However, after an individual has been issued a citation or warning ticket, any prolonged detention of an individual without "reasonable suspicion" of other criminal activity is a violation of the Fourth Amendment. *Boyce*, 351 F.3d at 1107; *Perkins*, 348 F.3d at 970; *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999) .

Whether an officer has a "reasonable suspicion" of criminal activity sufficient to justify such an investigatory stop is determined based on the totality of the circumstances, and from the collective

knowledge of the officer involved in the stop. *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990). However, "reasonable suspicion" may not be based on the officer's hunch, but requires that the police officer be able to point to specific and articulable facts which reasonably warrant the intrusion. *Id*. (citing, *Terry v. Ohio* at 1879); See also, *United States v. Mikell*, 102 F.3d 470, 475 (11th Cir. 1996) (police are required to articulate some minimal, objective justification for the stop). The fact that the driver is nervous, has out-of-state tags and/or provides slightly inconsistent statements does not create "reasonable suspicion" upon which a further detention is warranted. *Perkins*, 348 F.3d at 965;  *Pruitt*, 174 F.3d at 1219-1221; *Tapia*, 912 F.2d 1367, 1370.

At an evidentiary hearing, Mr. Padron will show that after the warning ticket was issued, Officer Autrey had no "reasonable suspicion" upon which he could base any further detention. Indeed, Officer Autrey was in violation of Alabama statute by further detaining Mr. Padron. *See Code of Ala*. § 32-1-4. In addition, the Eleventh Circuit has made it clear that an officer's hunch cannot form the basis of continued detention. *Perkins*, 348 F.3d at 965. Because the further detention of Mr. Padron was prohibited by the Fourth Amendment, any questioning, answers and consent that stem from the further detention must be suppressed/excluded. *Perkin*s, 348 F.3d at 969 (citing *United States v. Terzado-Madruga*, 897 F.3d 1099, 1112 (11th Cir. 1990)).

### Conclusion

Because the continued detention of Mr. Padron was in violation of the strictures of Alabama law, and there was no Fourth Amendment justification for the subsequent search of Mr. Padron's vehicle, any and all evidence, information or statements obtained as a result of his unlawful detention and the subsequent search of his vehicle must be suppressed.

**WHEREFORE**, the Defendant prays that this Honorable Court conduct an evidentiary

9

hearing to review the facts and circumstances surrounding the stop of his vehicle, and after conducting such hearing, issue an Order granting the motion and suppressing all evidence seized during the seizure or as a result thereof.  Additionally, any and all statements obtained as a result of the unlawful seizure are "fruit of the poisonous tree" and are due to be suppressed as well. *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

Dated this 5th day of October, 2007.


Respectfully submitted,

s/ Michael J. Petersen
MICHAEL J. PETERSEN
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: michael_petersen@fd.org
ASB-5072-E48M

10

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CASE NO: 2:07-CR-153-MEF** |
| | ) | |
| **EUGENIO T. PADRON** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Verne Speirs, Esquire
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, Alabama 36104

Respectfully submitted,

s/ Michael J. Petersen
MICHAEL J. PETERSEN
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: michael_petersen@fd.org
ASB-5072-E48M

11