IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:07CR153-MEF |
| | ) | |
| EUGENIO T. PADRON | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS**

Comes now the United States of America, by and through Leura Garrett Canary, United States Attorney for the Middle District of Alabama, and responds to Defendant's Motion To Suppress.

**Facts**

On July 7, 2007, Officer Robbie Autery of the Jemison, Alabama, Police Department was on traffic patrol. While patrolling Interstate 65, Officer Autery noticed a white Chevy Tahoe without a license plate. Based upon this traffic infraction, Officer Autery stopped the Tahoe. Once stopped, Officer Autery identified the driver as Eugenio Torres Padron. After talking to Padron, Officer Autery discovered that Padron did not have a driver's license. Officer Autery asked Padron to step to the back of the patrol car to receive a <u>warning</u> ticket. While preparing the warning ticket, Officer Autery asked Padron if he had anything illegal in his vehicle. Padron responded: "No you can search." Clarifying this response,

Officer Autery asked Padron if he consented to a search of his vehicle. Padron responded, "yes." After confirming Padron's consent, Officer Autery searched the vehicle and recovered a stolen firearm.[1]

Upon finding the stolen firearm, Padron admitted that the firearm was his and that he carried it for protection. Officer Autery arrested Padron for being a felon in possession of a firearm - a felony offense.

On July 18, 2007, a Grand Jury sitting in the Middle District of Alabama returned a one count Indictment charging Padron with being a felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1). Padron had previously been convicted by the State of Alabama for Possession of Drugs 1st Degree; Trafficking in Cannabis; and Failure to Affix Tax Stamp.

Currently, Padron attacks the evidence against him under five separate theories.[2] All of these theories seem to hinge on the operation of State law and the Fourth Amendment. In primary support of this arguments, Padron cites the Virginia Supreme Court's decision in <u>Moore v. Commonwealth</u>, 636 S.E.2d 395 (Nov. 2006).

---

[1] Despite evidence provided to Pardon in discovery, he frames his motion to suppress in terms of a "search incident to arrest." Pardon fails to advise the Court of evidence showing that he consented to a search of his vehicle and was arrested only after law enforcement recovered a stolen firearm from his vehicle. The United States has attached Officer Autery's Incident Offence Report for the Court's review - See Exhibit "A".

[2] Padron lists his arguments with Roman Numerals "I, II, III, IV, VI." The United States assumes Padron to have only five arguments.

Padron's theories are unsupported by law and fact because Padron was not searched incident to arrest.

### Argument

I. OFFICER AUTERY HAD PROBABLE CAUSE TO STOP PADRON

As an initial matter, the traffic stop that led to Padron's arrest was supported by probable cause because Padron had no tag on his vehicle. Whren v. United States, 517 U.S. 806, 810 (1996); United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999).

For the purposes of a Fourth Amendment analysis, routine traffic stops are deemed to be brief and "limited seizures" are "more analogous to an investigative detention than a custodial arrest." United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001)(quoting Berkemer v. McCarty, 468 U.S. 420, 439 (1984)). Thus, traffic stops are reviewed under the Terry v. Ohio, 392 U.S. 1 (1968) standard. Purcell, 236 F.3d at 1277. Moreover, "a decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred." Simmons, 172 F.3d at 778 (quoting Whren, 517 U.S. at 810)).

In his motion, Padron never contests the absence of a license plate or lack of a driver's license.

II.   PADRON WAS NOT ARRESTED PURSUANT TO AN ALABAMA TRAFFIC OFFENSE

Contrary to all evidence, Padron argues he was arrested for violating an Alabama traffic code - then searched incident to that arrest. Based upon this faulty premise, Padron cites Moore v. Commonwealth, 636 S.E.2d 395 (Va. 2006) to support suppressing the evidence against him.

In truth, Moore v. Commonwealth is easily distinguishable from the case at bar. In Moore, police detectives responded to a radio call that a motorist was operating a vehicle on suspended license. Pursuant to a state misdemeanor statute, Moore was arrested, handcuffed ,and placed into a police vehicle. See Moore at 395. Moore was then given his *Miranda* warnings. Afterwards, he consented to a search of his hotel room. Upon a search of his hotel room, police found contraband. See id. Moore was ultimately convicted of possession with intent to distribute cocaine. Id.

On appeal, Moore argued that he could not be arrested for a violation of a traffic code because the code itself requires that the offender be given a summons and then "release[ed] from custody upon his promise to appear at a specified time and place . . ." See id. at 396. In sum, Moore argued that police had no authority to arrest him for a traffic violation; therefore, any search incident to arrest was unconstitutional. In their November 2006 Opinion, the Supreme Court of Virginia

agreed with Moore and suppressed the evidence. On September 25, 2007, the United States Supreme Court granted certorari.

In the case at bar, Padron was never arrested for violating any Alabama traffic law. In fact, Padron was merely given a warning for his failure to display a tag and his failure to have a driver's license. While issuing Padron his warning, Officer Autery simply asked Padron if he had anything illegal in his vehicle. Padron replied, "no you can search." After clarifying Padron's response, and then searching the vehicle, Officer Autery recovered the stolen firearm. Padron's reliance on Moore is inapposite because Padron was not searched incident to arrest. Rather, Padron offered his vehicle for search. Padron was arrested only after Officer Autery recovered a stolen firearm.

III. THE STOLEN FIREARM WAS RECOVERED AFTER PARDON CONSENTED TO A SEARCH OF HIS VEHICLE

As detailed above, Pardon volunteered his vehicle for a search. According to established law, if a lawful traffic stop has been made, and the basis for the traffic stop has been accomplished, the police may then request consent to search the vehicle without announcing to the driver that he is free to leave. See Ohio v. Robinette, 519 U.S. 33 (1996); United States v. Purcell, 236 F.3d at 1281-1282.

Despite Padron's version of the facts, the evidence establishes that Padron spontaneously offered his vehicle for search. And, he was not arrested until after Officer Autery recovered the stolen firearm from his vehicle. Padron's recitation of Fourth Amendment case law relative to arrest for traffic violations is inapposite.

IV. PADRON'S ARREST DID NOT VIOLATE ALABAMA LAW

Despite citing United States v. Di Re and quoting §32-1-4(a), Code of Alabama, Padron was not arrested for violating any misdemeanor traffic code. The stolen firearm recovered from Padron's vehicle led to his arrest. Padron cannot point to any evidence suggesting he was arrested for violating an Alabama traffic code. In truth, Padron was given a warning for his traffic violations. Padron's failure to point to any evidence of a misdemeanor traffic arrest renders his legal arguments superfluous.

V. PADRON WAS ARRESTED BECAUSE HE WAS A FELON IN POSSESSION OF A FIREARM.

According to law, there is no requirement under the Fourth Amendment that the police secure a warrant before making an arrest for a felony. See United States v. Watson, 423 U.S. 411 (1976). In fact, the Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred. See United States v. Goddard, 312 F.3d 1360 (11th Cir. 2002).

Padron was arrested because he was a felon in possession of a stolen firearm. Pursuant to Title 18, United States Code, Section 922(g)(1), a felon in possession of a firearm is subject to ten years imprisonment.

VI. THE ELEVENTH CIRCUIT'S HOLDING IN <u>UNITED STATES V. HERNANDEZ</u> 418 F.3D 1206 (11TH Cir. 2005) SPECIFICALLY CONDONES QUESTIONING AND DETENTION OF AFTER CONSENT TO SEARCH

In <u>United States v. Hernandez</u>, 418 F.3d 1206 (11th Cir. 2005), the Eleventh Circuit held that once a defendant consents to a search, the clock restarts for purposes of evaluating the reasonableness of the duration of the intrusion. See <u>Hernandez</u> at 1210. Moreover, "further questioning unrelated to the initial traffic stop is permissible if the initial detention had become a consensual encounter." See <u>United States v. Pruitt</u>, 174 F.3d 1215, 1220 (11th Cir. 1999). Like <u>Hernandez</u>, Padron fails to argue that the search of his vehicle, post consent, lasted an unreasonably long time.

In his motion, Padron ignores evidence of his consent and instead alleges that Officer Autery had no "reasonable suspicion" for detention. In truth, Padron spontaneously offered his vehicle for search. Upon accepting Pardon's offer, law enforcement recovered incriminating evidence that led to his arrest.

Finally, even assuming Padron's traffic stop was essentially complete upon being given a warning ticket, merely asking Padron if there was anything illegal in

the car did not turn a completed traffic stop into an illegal detention. See <u>United States v. Simms</u>, 385 F.3d 1347 (11th Cir. 2004) (consent to search vehicle was lawfully obtained after the warning had been issued and after the checks on his license, registration and outstanding warrants had already been completed and had come back clean.).

In sum, Padron's motion fails to advise this Honorable Court of facts essential to the proper disposition of this case. Padron fails to address evidence of his consent and evidence that he was lawfully arrested after recovery of a stolen firearm. Rather than present these facts, Padron ignores them in order to suggest facts similar to <u>Moore v. Commonwealth</u>.

Considering the aforementioned, the United States respectfully requests that Defendant's motion be DENIED. In the alternative, the United States respectfully requests that, prior to any hearing on this matter, Padron address evidence of his consent to search and his subsequent arrest for being a felon in possession of a firearm.

Respectfully submitted this 12th day of October, 2007.

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Verne H. Speirs
VERNE H. SPEIRS
Assistant United States Attorney
131 Clayton Street
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
verne.speirs@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2007, I electronically filed the following response with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Michael Petersen.

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Verne H. Speirs
VERNE H. SPEIRS
Assistant United States Attorney
131 Clayton Street
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
verne.speirs@usdoj.gov

OFFICER'S WORK PRODUCT/ NOT TO BE PUBLIC INFORMATION

| INCIDENT/OFFENSE REPORT CONTINUED | DATE AND TIME OF REPORT M D Y 07/09/2007 | 21:06 | AM PM MIL | CASE # 070700503 | SFX | OFFENDER SUSPECT MISSING PERSON | CHECK IF MULTIPLE |

| NAME (LAST, FIRST, MIDDLE) | NICKNAME/ALIAS | RACE W A B I | SEX M F | DOB M D Y 7/14/1958 | AGE 48 |
|---|---|---|---|---|---|
| Padron, Eugenio Torres | | | | | |

| ADDRESS (STREET, CITY, STATE, ZIP) | HGT 5'11" | WGT 162 | EYE BRO | HAIR BLK | COMPLEXION DRK |
|---|---|---|---|---|---|
| 1073 Lyndwood Drive, Montgomery, AL 36106 | | | | | |

PROBABLE DESTINATION | ARMED? Y N UNK | WEAPON Handgun

CLOTHING | SCARS/MARKS/TATOOS | ARRESTED WANTED

**NARRATIVE:**

On listed date and time, Officer Autery initiated a traffic stop on a white Chevy Tahoe for no tag at the 217 mile marker south on I-65. Upon talking to the driver Eugenio Torres Padron, he told officer Autery he did not have a drivers license. Officer Autery asked Mr. Padron to step back to his patrol vehicle so he could issue him a written warning for the traffic violation. Officer Autery asked Mr. Padron if there was anything illegal in the vehicle and Mr. Padron responded, "No you can search." Officer Autery asked Mr. Padron if he gave his consent to search the vehicle and he replied, "yes." Upon the search of the vehicle in the center console a Hi point firearm model CF380 serial number P851161 loaded was recovered. Officer Autery asked Mr. Padron i this was his and he stated, "no." After Officer Autery told Mr. Padron he was going to charge him with the firearm Mr. Padron told him that it was his and he carried it for protection because earlier in the year he was shot. Officer Autery placed Mr. Padron under arrest for felon in possession of a firearm. The vehicle was impounded and taken to Jamison Police Dept. and Mr. Padron was transported to Chilton County Jail without incident or injury. Once back at the police department, Officer Autery ran the serial number and  the firearm was reported stolen out of

REPORTING OFFICER: Police Officer Robbie M. Autery - 135

SUPERVISOR APPROVAL: Deputy Chief Timothy B. Wright | WATCH CMDR: Deputy Chief Timothy B. Wright

**GOVERNMENT EXHIBIT**

CASE NO. _____

EXHIBIT NO. A

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| ADDITIONAL INCIDENT/OFFENSE NARRATIVE CONTINUED | 07/09/2007 21:06 PM | 070700503 | PAGE # 3 |

Montgomery Police Department.

TYPE OR PRINT IN BLACK INK ONLY