IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:07-CR-153-MEF |
| | ) | |
| EUGENIO T. PADRON | ) | |

**OBJECTIONS TO REPORT AND RECOMMENDATION**

**COMES NOW** the Defendant, Eugenio T. Padron, by and through undersigned counsel, Michael J. Petersen, and respectfully submits the following objections to the Magistrate Judge's Recommendations dated November 13, 2007. Mr. Padron objects to the Magistrate Judge's finding that the consent to search was freely given and therefore, that Mr. Padron's Motion to Suppress be denied. In addition, the Magistrate did not address the following issues raised by Mr. Padron in his Motion to Suppress: (1.) the Fourth Amendment prohibits officers from searching an individual incident to an unlawful arrest for a citation-only offense; (2.) The Fourth Amendment prohibits officers from searching an individual incident to an arrest which was in violation of state law; (3.) the arrest in this case violated Alabama law; (4.) the arrest in this case was unconstitutional because the officer lacked probable cause to believe Mr. Padron had committed an arrestable offense; and (5.) the Eleventh Circuit's holdings in *United States V. Perkins*, 348 F.3d 965 (11th Cir. 2003) and *United States V. Boyce*, 351 F.3d 1102 (11th Cir. 2003) specifically prohibited the further questioning and detention of Mr. Padron after the "warning ticket" was issued. These issues are discussed in detail individually below.

1

**SPECIFIC OBJECTIONS**

**1.      The Magistrate Judge Incorrectly Found That The Stop Was Legal.**

Mr. Padron objects to the Magistrate Judge's finding that "the initial traffic stop was legal and Padron voluntarily consented to the search of his vehicle." Doc. # 23 at 5. In finding that Mr. Padron's consent to search was proper, the Magistrate relied in part upon *United States v. Simms*, 385 F.3d 1347, 1354-55 (11th Cir. 2004) for the proposition that "an officer may lawfully obtain consent to search even after the initial reason for the traffic stop is over." Doc. #23 at 3.

However, *Simms* is not on point. The Eleventh Circuit analyzed the denial of Simms' motion to suppress on the issue of "whether the officers had an 'articulable suspicion' of other illegal activity that justified prolonging the traffic stop." *Simms* at 1354. No such assertions were raised by the officer during Mr. Padron's evidentiary hearing. During the Simms trial, officers testified that a BOLO and the defendant's continued nervousness "even after finding out that he would only be receiving a warning," were among the factors which led the officer to ask Simms if he was transporting anything illegal. *Id.* In finding that the *Simms* search was proper, the Eleventh Circuit held that while a "inchoate and unparticularized suspicion or hunch of criminal activity is not enough," there was "more than reasonable suspicion to justify prolonging the traffic stop after the warning ticket had been issued. *Id.* It was this "reasonable suspicion" which rendered academic the issue of the validity of the consent to search. *Id.* at 1355.

At no time during Mr. Padron's evidentiary hearing did the officer assert that he had an articulable suspicion of illegal activity other than the possibility that Mr. Padron's temporary tag had expired and that he did not have a valid driver's license. Doc. #23 at 2. There was certainly no assertion that there was a BOLO regarding Mr. Padron's vehicle. In fact, the officer testified at the

evidentiary hearing that Mr. Padron's vehicle tag was proper and within the twenty days for a temporary tag according to Alabama law. Therefore the officer's actions in prolonging the stop beyond the time necessary to ascertain that Mr. Padron's vehicle did have a proper temporary tag converted a legal stop into one which offended the Fourth Amendment. Thus, the Magistrate Judge should have found that the stop was illegal and the Motion to Suppress should have been granted.

**2.     The Magistrate Judge Incorrectly Found The Consent to Search Was Freely Given.**

In finding that Mr. Padron's consent was freely given, the Magistrate Judge relied upon the "totality of the circumstances" test as set forth in *United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002). Doc. #23 at 3. While *Ramirez-Chilel* examined five factors to consider in making a determination as to the voluntariness of a consent to search, the Magistrate Judge made no finding as to three of those five factors in assessing the "totality of the circumstances" surrounding Mr. Padron's consent. Specifically, there were no findings as to Mr. Padron's awareness of his right to consent, his cooperation, or of the extent of Mr. Padron's education and intelligence. *Id*. at 752. The Report and Recommendation found that Mr. Padron's consent was not coerced, that there was no evidence that Mr. Padron did not feel that he could leave, and thus, Mr. Padron consented to the search. Although the officer testified he "clarified" that Mr. Padron gave his consent, he did not testify that Mr. Padron knew that he was free to leave or that he could refuse consent. *Id*. See *Ramirez-Chilel* 289 F.3d at 752.

In making this assessment, the Magistrate evidently disregarded Mr. Padron's cooperation, made no finding as to his awareness of his right to consent, his education, or his intelligence. Thus, of the five factors comprising the "totality of the circumstances" raised in *Ramirez-Chilel*, there was a finding only as to two of the factors. Doc. #23 at 4. In fact, the Report and Recommendation states

that the fact that Mr. Padron believed that no incriminating evidence would be found was the only factor the Magistrate Judge considered in arriving at the conclusion that "based upon the totality of the circumstances Padron's consent was clearly freely given." *Id.*

Therefore, based upon the *Ramirez-Chilel* test for the "totality of the circumstances," the Magistrate Judge should have found that Mr. Padron's consent was not voluntary, the search was improper, the fruits of the search are inadmissible and Mr. Padron's motion to suppress should be granted.

3. **The Magistrate Judge Failed to Address the Issue of Whether The Fourth Amendment Prohibits Officers From Searching An Individual Incident To An Unlawful Arrest For A Citation-Only Offense.**

In addressing the issues raised in Mr. Padron's brief supporting his motion to suppress, the Magistrate Judge failed to address Mr. Padron's assertion that law enforcement officers are prohibited by the Fourth Amendment from searching an individual incident to an unlawful arrest for a citation-only offense. Mr. Padron reasserts that such an arrest offends the Fourth Amendment.

On September 25, 2007, the Supreme Court granted certiorari from a decision of the Supreme Court of Virginia which held that the search of a defendant after he was detained by police for operating a motor vehicle on a suspended license was a violation of the statute and therefore the Fourth Amendment to the Constitution of the United States required the suppression of evidence seized incident to that arrest. *Virginia v. Moore*, 2007 WL 387563 (U.S. Va. Sep 25, 2007) (NO. 06-1082). Mr. Padron asserts that he is in the same position as the defendant in *Virginia v. Moore*, in that, he too was unlawfully detained by the police for a misdemeanor traffic violation, in violation of Alabama law, and any evidence seized incident to that arrest must be suppressed pursuant to the

Fourth Amendment to the Constitution of the United States. As the evidence presented during the course of the evidentiary hearing demonstrated, Mr. Padron was unlawfully detained following the issuance of the "warning ticket." Doc. #23 at 2.

The Fourth Amendment's protection against "unreasonable searches and seizures" (*U.S. Const. Amend. IV*) embodies the foundational principle that – absent the application of a special exception – individuals will not be seized and searched without a warrant issued upon probable cause. The Supreme Court has recognized certain narrow exceptions to the warrant requirement, including an exception for a search incident to a lawful arrest. *See, e.g., United States v. Robinson*, 414 U.S. 218, 224 (1973).

Both the Supreme Court's decision in *Kneels v. Iowa*, 525 U.S. 113 (1998) and the Fourth Amendment prohibit searches such as the one which occurred in the instant matter. In *Kneels*, the Supreme Court unanimously held that the search incident to arrest exception to the warrant requirement does not extend to cases in which officers do not arrest the suspect, but only issue a citation. 525 U.S. at 119. In Mr. Padron's case, the officer testified that he only issued Mr. Padron a warning citation. Doc. #23 at 2. Additionally, as the Magistrate Judge noted in his Report and Recommendation, the officer testified that he continued to detain Mr. Padron "approximately five to eight minutes" while awaiting the arrival of another officer. *Id.* This detention rendered the initial voluntary consent by Mr. Padron involuntary and the subsequent search illegal.

The finding that Mr. Padron voluntarily gave his consent to the search and that this consent continued for the time that it took the backup to arrive effectively revokes Mr. Padron's Fourth Amendment right to be free of "unreasonable searches and seizures," and changed this otherwise consensual encounter into a seizure. *U.S. Const. Amend. IV*; *United States v. Arvizu*, 534 U.S. 266,

273 (2002). The subsequent finding of the firearm is irrelevant to the fact that before this search began, Mr. Padron had been unlawfully arrested without probable cause by being detained beyond the time necessary to conclude the issuance of the traffic citation.

Prohibiting searches incident to unlawful arrests is consistent with the long-held understanding of the proper balance of interests between citizens' privacy and legitimate law enforcement needs. Thus, the Magistrate Judge should have found that the search was rendered unlawful by Mr. Padron's continued detention following the issuance of the traffic citation and therefore the evidence should be suppressed.

**4.    The Magistrate Judge Failed to Address the Issue of Whether the Fourth Amendment Prohibits Officers From Searching An Individual Incident To An Arrest Which Was In Violation of State Law.**

The Report and Recommendation failed to address Mr. Padron's assertion in his motion to suppress that while suppression of evidence under the Fourth Amendment is governed by federal law, state law plays a substantial role in a Fourth Amendment analysis of the propriety of a search such as this one. Mr. Padron asserted that because the state controls the circumstances under which a constitutional search may occur by, at the very least, defining the elements of a state criminal offense, the court must examine the role that law plays in determining the reasonableness of police conduct in a warrantless search context.

The Supreme Court has never held that the search incident to arrest doctrine permits a search whenever an officer arrests an individual regardless of the officer's legal authority to effect the arrest. To the contrary, in *Robinson*, the Court took care to state nine times that its holding applied only to searches incident to a "lawful" arrest. *e.g.*, 414 U.S. at 224 ("It is well settled that a search incident to a *lawful* arrest is a traditional exception to the warrant requirement of the Fourth Amendment.")

(*emphasis added*); *Id*. at 235 ("It is the fact of the *lawful* arrest which establishes the authority to search, and we hold that in the case of a *lawful* custodial arrest a full search of the person is ... a 'reasonable' search under that Amendment.") (*emphasis added*). *Id.*

A "lawful" arrest does not simply mean an arrest which complies with the probable cause requirement of the Fourth Amendment even when the arrest is otherwise unauthorized. The Supreme Court's decision in *Michigan v. DeFillipo*, 443 U.S. 31 (1979), makes it clear that the opposite is true. In *DeFillipo*, the defendant was arrested for violating an ordinance that was later declared unconstitutional. During a search incident to that arrest it was discovered that the defendant was in possession of controlled substances, and he was charged with drug possession. *Id*. at 33-34. In deciding whether the Fourth Amendment required that the drug evidence be suppressed, the Supreme Court applied the established rule that "an arresting officer may, without a warrant, search a person *validly* arrested." *Id*. at 35 (*emphasis added*). To decide whether a valid arrest had occurred or had not, the Court examined both the state law authorization for the arrest and then looked to the question of whether the arrest otherwise violated the Fourth Amendment.

The Court began by holding that "[w]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *Id.* at 36. In *DeFillipo*, the question required little analysis because the defendant did "not contend ... that the arrest was not authorized by Michigan law," pursuant to the State's general arrest statute. *See Id.* at 36, 40. The Court next concluded that an arrest based on probable cause to believe that a suspect had violated a not-yet-invalidated ordinance did not independently violate the Fourth Amendment. *Id*. at 36-38. Concluding that the arrest was authorized by state law and did not otherwise violate the Fourth Amendment, the Court held that "the search which followed was valid because it was incidental to

that arrest." *Id*. at 40.

The *DeFillipo* analysis was consistent with the Supreme Court's earlier decision in *United States v. Di Re*, 332 U.S. 581 (1948). In *Di Re*, the defendant was arrested by local law enforcement officers, working with a federal investigator, for possessing counterfeit gasoline ration coupons. 332 U.S. at 582. During the course of his federal prosecution, the defendant moved to suppress the evidence of the coupons because they were "obtained in violation of the Fourth Amendment." *United States v. Di Re*, 159 F.2d 818, 818 (2d Cir, 1947). The Second Circuit agreed with the defendant and found that the arrest was in violation of state law and that the search was therefore unconstitutional: "If the prosecution of crime is to be conducted with so little regard for that protection which centuries of English law have given to the individual, we are indeed at the dawn of a new era; and much that we have deemed vital to our liberties, is a delusion." *Id*. at 820. Before the Supreme Court, the Government asserted that the search fell within the search incident to arrest exception to the Fourth Amendment's warrant requirement. *See* 332 U.S. at 583-84. The Supreme Court disagreed and held that if the defendant "was lawfully arrested, it is not questioned that the ensuing search was permissible." 332 U.S. at 587. However, the Court then stated that they "must examine the circumstances and the law of arrest." *Id*. The Court held that "in the absence of an applicable federal statute the law of the state where an arrest without warrant takes place determines its validity." *Id*. at 589. Finding that the arrest in the case before it did not comply with local law, the Court held that the arrest was unlawful and, accordingly, declined to apply the search incident to arrest doctrine. *Id*. at 588-95. Mr. Padron's continued detention by Officer Autrey following the issuance of the warning citation was an unlawful arrest and as will be shown *infra,* a violation of state law regarding the issuance of traffic citations.

As a result, the Magistrate Judge should have found that the Fourth Amendment is offended by a search which is conducted as a result of an unlawful arrest. Therefore, the motion to suppress should have been granted and the evidence suppressed.

**5.   The Magistrate Judge Failed to Address the Issue of Whether The Arrest in This Case Violated Alabama Law.**

Mr. Padron asserted in his motion to suppress that his detention by Officer Autrey was in violation of state law. Officer Autrey testified during the evidentiary hearing that he continued to detain Mr. Padron for an additional five to eight minutes following the issuance of the warning ticket. Doc. #23 at 2. This, was in clear violation of Alabama law.

Just as it was in *Di Re*, the arrest in the instant matter was unauthorized. *See United States v. Di Re*, 159 F.2d 818 (2d Cir, 1947). In Alabama, an officer conducting a traffic stop must comply with the provisions of the Alabama statute governing misdemeanor violations of the traffic code. *See Code of Ala*. § 32-1-4 (2007). Section 32-1-4(a) requires, in pertinent part, that, when an individual is arrested for a violation of any provision of the Motor Vehicles and Traffic Code which is punishable as a misdemeanor, "the arresting officer shall, unless otherwise provided in this section, take the name and address of such person and the license number of his or her motor vehicle, and shall issue a summons." *Code of Ala*. § 32-1-4(a). Officer Autrey testified that he issued Mr. Padron a warning citation for not having a valid driver's license. Doc. #23 at 1.

Mr. Padron asserted in his motion to suppress and reasserts now, that he was subject to none of the exceptions listed in the Alabama statute. If an individual is not subject to one of the statutory exceptions, then this section of the Code of Alabama provides that the arresting officer shall then "forthwith release the person from custody." *Id*. The Alabama traffic code specifies that the an

9

individual who is driving without a license is guilty of a misdemeanor upon conviction. *Code of Ala.* § 32-6-19(a)(1) (2007). As Officer Autrey testified, he continued to detain Mr. Padron for an additional five to eight minutes while awaiting backup instead of "forthwith" releasing him. Doc. #23 at 2.

Therefore, Officer Autrey exceeded his authority under the applicable Alabama statutes and the continuing detention of Mr. Padron following the issuance of the warning citation was and unlawful arrest. In light of the Supreme Court's holdings in *Kneels* and *Di Re*, and pursuant to the requirement of the Fourth Amendment that a warrantless search may only be undertaken following a *lawful* arrest, the Magistrate Judge should have found that Mr. Padron's continued detention was an unlawful arrest in violation of Alabama law, the subsequent search was improper and the fruits of the that search must be suppressed.

6.  **The Magistrate Judge Failed to Address the Issue of Whether The Search In This Case Was Unconstitutional Because The Officer Lacked Probable Cause To Believe Mr. Padron Had Committed An Arrestable Offense.**

The Magistrate Judge did not address Mr. Padron's assertion that the search of his vehicle was contrary to established Supreme Court law concerning traffic citations and subsequent searches. In 1998, a unanimous Supreme Court held that when an Iowa police officer stopped a citizen for a traffic violation, and issued him a citation, a subsequent search of the vehicle is inconsistent with the Fourth Amendment. *Kneels v. Iowa*, 525 U.S. 113, 114 (1998). Before his trial, Kneels moved to suppress the evidence obtained in the search of his vehicle asserting that the search could not be sustained under the "search incident to arrest" exception recognized in *United States v. Robinson*, 414 U.S. 218 (1973), because he had not been placed under arrest. The fact that Officer Autrey issued Mr. Padron a warning citation, that Alabama law required his "forthwith" release, following

that warning citation, and that the officer failed to articulate an "articulable suspicion" of other illegal activity that justified prolonging the traffic stop, *Simms* 385 F.3d at 1354, clearly illustrates that the search cannot be sustained under the "search incident to arrest" exception in *Robinson*. 414 U.S. 218.

The Supreme Court in *Robinson, supra*, noted there were two historical rationales for the "search incident to arrest" exception: (1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial. 414 U.S., at 234, 94 S.Ct. 467. However, in *Kneels*, the Court held that neither of these underlying rationales for the search incident to arrest exception were sufficient to justify the search. 525 U.S. at 116-17. As in *Kneels*, neither of the above exceptions were sufficient to justify the search of Mr. Padron's vehicle and therefore, the Magistrate Judge should have determined that all evidence found as a result of the search, stemming from an *unlawful* detention must be suppressed.

7.    **The Magistrate Judge Failed to Address the Issue of Whether The Eleventh Circuit's Holding in *United States V. Perkins*, 348 F.3d 965 (11th Cir. 2003) and *United States V. Boyce*, 351 F.3d 1102 (11th Cir. 2003) Specifically Prohibited the Further Questioning and Detention of Mr. Padron after the "Warning Ticket" Was Issued.**

In addition to violating Alabama law concerning the "forthwith" release of an individual following the issuance of a traffic citation, the Magistrate Judge failed to address Mr. Padron's contention that Eleventh Circuit precedent specifically prohibited the further questioning and detention of Mr. Padron once the traffic citation had been issued.

Eleventh Circuit precedent clearly shows that while not all police-citizen encounters trigger Fourth Amendment scrutiny, a traffic stop is a limited seizure within the meaning of the Fourth Amendment, and it is analogous to an investigative detention. *United States v. Perkins*, 348 F. 3d

965, 969 (11th Cir. 2003). Therefore, the legality of such stops is analyzed under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *Terry* requires that such stops require "an officer [to] have an objective, reasonable suspicion of criminal activity," before seizing (or continuing to seizure of) an individual. *Id*. Therefore, if an officer has cause to believe an individual has committed a traffic infraction, the individual can be stopped and seized while the traffic infraction is investigated and activities related to the traffic stop are concluded. *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir.2001). As stated above, Officer Autrey did have cause to believe that Mr. Padron may have committed a traffic infraction, driving a vehicle with an expired temporary tag. However, as the officer testified, he quickly determined that the temporary tag had not expired. Thus, at that time the officer no longer had reason to believe Mr. Padron had committed a traffic infraction. He should have then released Mr. Padron because he did not have any further "objective, reasonable suspicion of criminal activity." *See Terry v. Ohio*, 392 U.S. 1(1968). However, the Eleventh Circuit precedent allows for additional investigative activities.

Some of these investigative activities are a driver and criminal history check. *United States v. Boyce*, 351 F.3d 1102 (11th Cir. 2003). Subsequently, drivers and their vehicles can be detained after a valid traffic stop while a "license check" or "criminal history check" are being conducted. *Id*. Officer Autrey testified that both a license check and a criminal history check were conducted before he wrote Mr. Padron the traffic citation. Doc. #23 at 1. However, after an individual has been issued a citation or warning ticket, any prolonged detention of an individual without "reasonable suspicion" of other criminal activity is a violation of the Fourth Amendment. *Boyce*, 351 F.3d at 1107; *Perkins*, 348 F.3d at 970; *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999). Officer Autrey testified that he detained Mr. Padron for an additional five to eight minutes after the

traffic citation was issued so that backup could arrive. Doc. #23 at 2. However, at no time did Officer Autrey testify that he suspected Mr. Padron of other criminal activity. *Id.*

Whether an officer has a "reasonable suspicion" of criminal activity sufficient to justify such an investigatory stop is determined based on the totality of the circumstances, and from the collective knowledge of the officer involved in the stop. *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990). However, "reasonable suspicion" may not be based on the officer's hunch, but requires that the police officer be able to point to specific and articulable facts which reasonably warrant the intrusion. *Id*. (citing, *Terry v. Ohio* at 1879); See also, *United States v. Mikell*, 102 F.3d 470, 475 (11th Cir. 1996) (police are required to articulate some minimal, objective justification for the stop). The fact that the driver is nervous, has out-of-state tags and/or provides slightly inconsistent statements does not create "reasonable suspicion" upon which a further detention is warranted. *Perkins*, 348 F.3d at 965; *Pruitt*, 174 F.3d at 1219-1221; *Tapia*, 912 F.2d 1367, 1370.

As testimony elicited during the evidentiary hearing demonstrated, after the warning ticket was issued, Officer Autrey had no "reasonable suspicion" upon which he could base any further detention. Doc. #23 at 2. Indeed, Officer Autrey was in violation of Alabama statute by further detaining Mr. Padron. *See Code of Ala*. § 32-1-4. In addition, the Eleventh Circuit has made it clear that an officer's hunch cannot form the basis of continued detention. *Perkins*, 348 F.3d at 965. Because the further detention of Mr. Padron was prohibited by the Fourth Amendment, any questioning, answers and consent that stem from the further detention must be suppressed/excluded. *Perkins*, 348 F.3d at 969 (citing *United States v. Terzado-Madruga*, 897 F.3d 1099, 1112 (11th Cir. 1990)).

13

**8.	Recommendation Denying Motion to Suppress**

For the reasons stated in sections 1 through 7 above, Mr. Padron objects to the Magistrate Judge's Recommendation denying his motion to suppress (Doc. #23 at 5) and urges the District Judge to find, on *de novo* review that Mr. Padron's motion to suppress should be granted and all material evidence discovered and any and all statements made by Mr. Padron are the "fruit of the poisonous tree" and are due to be suppressed as well. *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

**WHEREFORE,** Mr. Padron asks this Court enter an order suppressing all evidence (statements and items) seized from his vehicle. This evidence includes, but is not limited to:

(a)	any and all physical evidence seized from the vehicle;

(b)	any and all statements made by Mr. Padron during or after any stop, search or seizure of the vehicle and/or after Mr. Padron's arrest; and

(c)	any and all evidence obtained as a result or "fruit" of any such seizures.

Dated this 27th day of November 2007.

Respectfully submitted,

s/ Michael J. Petersen
MICHAEL J. PETERSEN
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: michael_petersen@fd.org
ASB-5072-E48M

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:07-CR-153-MEF |
| | ) | |
| EUGENIO T. PADRON | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Verne Speirs, Esq.
> Assistant United States Attorney

> Respectfully submitted,
>
> s/ Michael J. Petersen
> MICHAEL J. PETERSEN
> Assistant Federal Defender
> 201 Monroe Street, Suite 407
> Montgomery, Alabama 36104
> Phone: (334) 834-2099
> Fax: (334) 834-0353
> E-mail: michael_petersen@fd.org
> ASB-5072-E48M